**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **CARRIE CASTILLO, ANASTASSIA LETOURNEAU, and JACQUELYN MYHRE, on behalf of themselves and all others similarly situated,** | |
| **Plaintiffs,** | No. 16-cv-3036 |
| **-against-** | Hon. Andrea R. Wood |
| **NOODLES & COMPANY,** | |
| **Defendant.** | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF SETTLEMENT,
SERVICE AWARD, AND ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND................................................................. 2

I.    Factual Allegations ................................................................................................ 2

II.    Overview of Investigation, Litigation and Settlement Negotiations ................................ 2

SUMMARY OF THE SETTLEMENT TERMS................................................................... 4

I.    The Settlement Fund........................................................................................... 4

II.    Eligible Employees ............................................................................................ 5

III.    Claim Procedure................................................................................................ 5

IV.    Release ............................................................................................................ 6

V.    Allocation Formula ............................................................................................ 6

VI.    Service Award.................................................................................................... 7

VII.    Settlement Claims Administration......................................................................... 7

VIII.    Attorneys' Fees and Litigation Costs .................................................................... 8

ARGUMENT ...................................................................................................................... 8

I.    A One-Step Approval Process Is Standard for FLSA Settlements .................................. 8

II.    The Settlement Is Fair and Reasonable and Should Be Approved ................................. 10

III.    The Service Awards to Plaintiffs Should Be Approved as Fair and Reasonable ............. 12

IV.    Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable......................... 17

        A.    The Court Should Award Attorneys' Fees From a Percentage of the Fund .................................................................. 17

        B.    The Results and Benefits Conferred Upon the Class Justify the Fee Award ................................................................ 19

        C.    Analysis of the Market For Legal Services Supports Plaintiffs' Request ................................................................. 20

        1.    Plaintiffs' Request for One-Third of the Settlement Is the Normal Rate of Compensation in the Northern District of Illinois Market ........ 21

        2.    The Risk of Nonpayment Was Significant ............................................ 23

    D.    Plaintiffs' Counsel's Fee Request Is Reasonable and Should Be Approved Without a Lodestar Cross-Check .................................................... 24

    E.    Although the Court Should Not Use the "Redman Ratio Test" to Cross-Check the Settlement, the Fee Request Would Pass It ........................ 25

        1.    The Redman Ratio Test Should Not Apply ........................................... 25

        2.    The Court Should Analyze the Actual Value to the Class Based on the Total Available Amount Available to Be Claimed ......................... 28

CONCLUSION ..................................................................................................... 29

## TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   Nos. 07 Civ. 2898, 09 Civ. 2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) .......................14

*In re Amino Acid Lysine Antitrust Litig.*,
   No. 95 Civ. 7679, 1996 WL 197671 (N.D. Ill. Apr. 22, 1996) ...............................................18

*Aros v. United Rentals, Inc.*,
   10 Civ. 73, *et al.*, 2012 WL 3060470 (D. Conn. July 26, 2012).................................................9

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   792 F. Supp. 2d 1028 (N.D. Ill. 2011) ....................................................................................19

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ......................................................................................9, 11

*Beesley v. Int'l Paper Co.*,
   No. 06 Civ. 703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) .................................................15

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
   No. 00 Civ. 584, 2004 WL 287902 (S.D. Ill. Jan. 22, 2004) .................................................17

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980).................................................................................................17, 28, 29

*Bozak v. Fedex Ground Package Sys., Inc.*,
   No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014)..........................................9, 12

*Burkholder v. City of Ft. Wayne*,
   750 F. Supp. 2d 990 (N.D. Ind. 2010) ...............................................................................10, 22

*Butler v. Am. Cable & Tel., LLC*,
   No. 09 Civ. 5336, 2011 WL 4729789 (N.D. Ill. Oct. 6, 2011)...............................................10

*Campbell v. Advantage Sales & Mktg. LLC*,
   No. 09 Civ. 1430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012) ........................................9, 22

*Ceka v. PBM/CMSI Inc.*,
   No. 12 Civ. 1711, 2014 WL 6812127 (S.D.N.Y. Dec. 2, 2014).............................................16

*In re Cendant Corp. PRIDES Litig.*,
   243 F.3d 722 (3d Cir. 2001).....................................................................................................18

*Chesemore v. Alliance Holdings, Inc.*,
   No. 09 Civ. 413, 2014 WL 4415919 (W.D. Wis. Sept. 5, 2014)...............................13, 14, 16

*Matter of Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ...........................................................................24

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) .....................................................................13, 14

*In re Dairy Farmers of Am., Inc.*,
  80 F. Supp. 3d 838 (N.D. Ill. 2015) .....................................................22, 23, 25

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  No. 09 Civ. 3690, 2014 WL 1017515 (N.D. Ill. Mar. 17, 2014) ......................8

*Dawson v. Pastrick*,
  600 F.2d 70 (7th Cir. 1979) .............................................................................10

*Dixon v. Zabka*,
  No. 11 Civ. 982, 2013 WL 2391473 (D. Conn. May 23, 2013) .........................9

*Espenscheid v. DirectSat USA, LLC*,
  688 F.3d 872 (7th Cir. 2012) .....................................................................13, 15

*Espenscheid v. DirectSat USA, LLC*,
  705 F.3d 770 (7th Cir. 2013) .............................................................................9

*Eubank v. Pella Corp.*,
  753 F.3d 718 (7th Cir. 2014) ..................................................................... *passim*

*Florin v. Nationsbank of Ga., N.A.*,
  34 F.3d 560 (7th Cir. 1994) .........................................................................18, 19

*Follansbee v. Discover Fin. Servs., Inc.*,
  No. 99 Civ. 3827, 2000 WL 804690 (N.D. Ill. June 21, 2000) ......................13

*Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*,
  No. 11 Civ. 592, 2013 WL 5745102 (W.D. Wis. Oct. 23, 2013) ......................10

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005).....................................................................17

*Gaskill v. Gordon*,
  160 F.3d 361 (7th Cir. 1998) ...........................................................................23

*Gaskill v. Gordon*,
  942 F. Supp. 382 (N.D. Ill. 1996) ................................................................18, 19

*Genesis Healthcare Corp. v. Symczyk*,
  133 S. Ct. 1523 (2013)......................................................................................9

*Goldberger v. Integrated Res., Inc.*,
　209 F.3d 43 (2d Cir. 2000)..................................................................................................19

*Goldsmith v. Tech. Solutions Co.*,
　No. 92 Civ. 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)............................................23

*Gromek v. Big Lots, Inc.*,
　No. 10 Civ. 4070, 2010 WL 5313792 (N.D. Ill. Dec. 17, 2010) ..........................................11

*Guippone v. BH S & B Holdings, LLC*,
　No. 09 Civ. 1029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ..........................................15

*Hawkins v. Securitas Sec. Servs. USA, Inc.*,
　280 F.R.D. 388 (N.D. Ill. 2011).............................................................................................13

*Heekin v. Anthem, Inc.*,
　No. 05 Civ. 1908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012)....................................17, 25

*Hens v. Clientlogic Operating Corp.*,
　No. 05 Civ. 381, 2010 WL 5490833 (W.D.N.Y. Dec. 21, 2010) ..........................................17

*Hernandez v. Merrill Lynch & Co., Inc.*,
　No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ..........................................16

*Jackson v. Go-Tane Servs., Inc.*,
　No. 99 Civ. 5686, 2001 WL 826867 (N.D. Ill. July 18, 2001)..............................................11

*Johnson v. Midwest Logistics Sys., Ltd.*,
　No. 11 Civ. 1061, 2013 WL 2295880 (S.D. Ohio May 24, 2013)..........................................16

*Kaplan v. Houlihan Smith & Co.*,
　No. 12 Civ. 5134, 2014 WL 2808801 (N.D. Ill. June 20, 2014) .....................................17, 24

*Khait v. Whirlpool Corp.*,
　No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)..........................................16

*Kifafi v. Hilton Hotels Ret. Plan*,
　999 F. Supp. 2d 88 (D.D.C. 2013) ........................................................................................15

*Koszyk v. Country Fin. a/k/a CC Services, Inc.*,
　No. 16 Civ. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016)...................................*passim*

*Lapan v. Dick's Sporting Goods, Inc.*,
　No. 13 Civ. 11390, 2015 WL 8664204 (D. Mass. Dec. 11, 2015) ........................................20

*In re Lorazepam & Clorazepate Antitrust Litig.*,
　Nos. MDL 1290, 99 MS 276, 99 Civ. 0790, 2003 WL 22037741
　(D.D.C. June 16, 2003) ........................................................................................................16

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) ................................................................10

*Massiah v. MetroPlus Health Plan, Inc.*,
    No. 11 Civ. 5669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ...........................13

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) ................................................................29

*McKenna v. Champion Int'l Corp.*,
    747 F.2d 1211 (8th Cir. 1984) ................................................................9

*Ottaviano v. Home Depot, Inc., USA*,
    701 F. Supp. 2d 1005 (N.D. Ill. 2010) ................................................................11

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
    No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) .........................15, 17

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ..................................................... *passim*

*Pierce v. Visteon Corp.*,
    791 F.3d 782 (7th Cir. 2015) ................................................................19

*Powell v. Lakeside Behavioral Healthcare, Inc.*,
    No. 11 Civ. 719, 2011 WL 5855516 (M.D. Fla. Nov. 22, 2011) ...........................9

*Prena v. BMO Fin. Corp.*,
    No. 15 Civ. 9175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) .............8, 9, 18, 26

*Primax Recoveries, Inc. v. Sevilla*,
    324 F.3d 544 (7th Cir. 2003) ................................................................17

*Raymer v. Mollenhauer*,
    No. 10 Civ. 210, 2011 WL 338825 (N.D. Ind. Jan. 31, 2011) ...............................9

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ..................................................... *passim*

*Reyes v. Altamarea Grp., LLC*,
    No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ...........................17

*Roberts v. Apple Sauce, Inc.*,
    No. 12 Civ. 830, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014) .........................9, 10

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................24

*Sewell v. Bovis Lend Lease, Inc.*,
  No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ............................................15

*Singleton v. Domino's Pizza, LLC*,
  976 F. Supp. 2d 665 (D. Md. 2013) ...........................................................................................15

*Skelton v. G.M. Corp.*,
  860 F.2d 250 (7th Cir. 1988) .....................................................................................................18

*Sukhnandan v. Royal Health Care of Long Island LLC*,
  No. 12 Civ. 4216, 2014 WL 3778173 (S.D.N.Y. July 31, 2014) .....................................14, 16

*Summers v. UAL Corp. ESOP Comm.*,
  No. 03 Civ. 1537, 2005 WL 3159450 (N.D. Ill. Nov. 22, 2005)................................................12

*Sutton v. Bernard*,
  504 F.3d 688 (7th Cir. 2007) ..............................................................................................17, 21, 23

*Swigart v. Fifth Third Bank*,
  No. 11 Civ. 88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) ................................................16

*In re Synthroid Mktg. Litig.*,
  325 F.3d 974 (7th Cir. 2003) ...............................................................................................18, 22

*Taubenfeld v. AON Corp.*,
  415 F.3d 597 (7th Cir. 2005) ...............................................................................................21, 23

*Tobin v. Beer Capitol Distrib. Inc.*,
  No. 12 Civ. 274, 2012 WL 5197976 (E.D. Wis. Oct. 19, 2012) ..............................................12

*In re Trans Union Corp. Privacy Litig.*,
  No. 00 Civ. 4729, 2009 WL 4799954 (N.D. Ill. Dec. 9, 2009) ................................................24

*Urnikis-Negro v. American Family Prop. Servs.*,
  616 F.3d 665 (7th Cir. 2010) .....................................................................................................20

*Velez v. Majik Cleaning Serv., Inc.*,
  No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007).............................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)..........................................................................................................18

*Watson v. BMO Fin. Corp.*,
  No. 15 Civ. 11881 (N.D. Ill. July 11, 2016) ........................................................8, 14, 16, 23

*Williams v. Rohm & Haas Pension Plan*,
  658 F.3d 629 (7th Cir. 2011) .....................................................................................................24

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ............................................................18

*Woods v. N.Y. Life Ins. Co.*,
    686 F.2d 578 (7th Cir. 1982) ...............................................................9

*Zolkos v. Scriptfleet, Inc.*,
    No. 12 Civ. 8230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ................................12, 14, 16

## STATUTES

29 U.S.C. § 216(b) ............................................................................18

## OTHER AUTHORITIES

Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of
    Incentive Payments to Named Plaintiffs in Employment Discrimination Class
    Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) ....................................13

4 Robert Newberg, *Newberg on Class Actions* § 14.6 (4th ed. 2002) .........................23

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action
    Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303 (2006).............................17

## INTRODUCTION

Plaintiffs, Carrie Castillo, Anastassia Letourneau, and Jacquelyn Myhre ("Named Plaintiffs"), and Defendant, Noodles & Company ("Defendant"), have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective-wide basis for significant monetary relief. The settlement, which followed a thorough investigation, motion practice, and informal discovery, satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a bona-fide dispute, was reached after contested litigation, was the result of arm's-length settlement negotiations, assisted by a private mediator, between experienced counsel, and provides good value to the workers whom it will benefit.

Plaintiffs respectfully request that the Court issue an order: (1) approving the $3,000,000.00 settlement set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement") attached as Exhibit A to the Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Approval of Settlement, Service Award, and Attorneys' Fees and Costs ("Swartz Decl.");[1] (2) approving the proposed Official Court Notice of Settlement and Opportunity to Join ("Settlement Notice and Claim Form") (attached as Exhibit B to the Settlement Agreement) and directing its distribution; (3) approving service awards of $10,000 each to Named Plaintiffs and Tammie Carter ("*Carter* Plaintiff");[2] (4) approving Plaintiffs' request for one-third of the settlement for attorneys' fees plus reimbursement of costs and expenses; (5) approving the Settlement Administrator's fees and costs of $32,621.04, and (6)

---

[1]     Unless otherwise indicated, all exhibits are attached to the Swartz Declaration, and all capitalized terms have the definitions set forth in the Settlement Agreement. The Swartz Declaration is attached as Exhibit 1 to this memorandum of law.

[2]     Carter was the plaintiff in the collective and class action *Tammie Carter v. Noodles & Co.*, No. 16 Civ. 319, filed on February 10, 2016, in the District of Colorado ("*Carter* case"), and which was dismissed without prejudice on June 29, 2016, as part of this settlement.

incorporating the terms of the Settlement Agreement.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Factual Allegations

Plaintiffs are former employees of Defendant who worked as Assistant General Managers ("AGMs").  Castillo worked as an AGM at Defendant's store located in Wheaton, Illinois, from approximately April 2013 to December 2014.  Letourneau worked as an AGM at Defendant's stores in West St. Paul, Roseville, and Richfield, Minnesota, from approximately August 2007 to April 2014.  Myhre worked as an AGM at Defendant's store located in Edina, Minnesota, from approximately May 2012 to March 2014.  Carter worked as an AGM at Defendant's stores located in Colorado Springs, Colorado, from approximately January 2015 to February 2016. Swartz Decl. ¶ 14.  Plaintiffs allege that Defendant violated the FLSA by improperly classifying them, and other AGMs, as exempt from federal overtime requirements and failing to pay them overtime wages.  Defendant denies that it committed any wrongdoing or violated any federal, state or local laws pertaining to payment of wages or hours worked and vigorously disputed the claims asserted in the litigation.

### II.      Overview of Investigation, Litigation and Settlement Negotiations

Before the initiation of this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses.  *Id.* ¶ 15.  Plaintiffs' Counsel focused their investigation and legal research on the underlying merits of the potential class and collective action members' claims, the damages to which they were entitled, and the propriety of collective action certification.  *Id.* ¶ 16.  Plaintiffs' Counsel obtained and reviewed documents from Plaintiffs and other sources, including job descriptions, pay records, and corporate documents.

---

[3]      A Proposed Order is attached as Exhibit A to the Settlement Agreement.

*Id.* ¶ 17.  Plaintiffs' Counsel also conducted in-depth interviews of multiple AGMs.  *Id.* ¶ 18.

In a letter dated November 20, 2016, Outten & Golden LLP ("O&G") and the Shavitz Law Group, P.A. ("SLG") informed Defendant of the allegations that AGMs were misclassified as exempt and of their intent to litigate if a pre-litigation settlement could not be reached.  *Id.* ¶ 19.

While pre-mediation discussions between counsel for Defendant, O&G and SLG were ongoing, on February 10, 2016, the *Carter* Plaintiff commenced a separate action against Noodles in the District of Colorado, *Carter v. Noodles & Company*, No. 16 Civ. 319 (D. Colo. Feb. 10, 2016), pleading claims on behalf of a Colorado state law class and a proposed nationwide FLSA collective.  *Id.* ¶ 20.

On March 10, 2016, Plaintiffs Carrie Castillo, Anastassia Letourneau, and Jacquelyn Myhre filed their collective and class action Complaint in the Northern District of Illinois, on behalf of AGMs nationwide, alleging violation of the FLSA and Illinois and Minnesota wage and hour laws.  *See* ECF No. 1.  On March 14, 2016, Plaintiffs promptly filed a motion for court-authorized notice pursuant to section 216(b) of the FLSA.  *See* ECF Nos. 2-3.  The Court entered and continued Plaintiffs' motion pending the resolution of Noodles' then-anticipated motion to transfer venue to the District of Colorado.  *See* ECF No. 13.  On March 31, 2016, Noodles moved to transfer the *Castillo* action to the District of Colorado or stay the *Castillo* action pending the outcome of *Carter*, and the parties extensively briefed that motion.  *See* ECF Nos. 15-18; *see also* ECF Nos. 20, 23-25, 27, 29, 31.

Meanwhile, the *Carter* Plaintiff served Noodles with discovery demands on April 25, 2016.  On May 27, 2016, Plaintiff Carter moved to send FLSA notice.  On June 14, 2016, Plaintiff Carter filed a motion to dismiss her suit without prejudice in order to join the *Castillo*

3

litigation.  The *Carter* Court granted the *Carter* Plaintiff's motion to dismiss on June 29, 2016.

Thereafter, the parties in *Castillo* jointly moved on July 7, 2016 to stay this matter pending

mediation, which was granted on July 12, 2016.  Swartz Decl. ¶ 22; *see* ECF No. 35.

As part of the mediation process, the parties then engaged in an informal exchange of

discovery.  Swartz Decl. ¶ 23.  Defendant produced data to allow the parties to calculate

damages, including data showing the number of potential class members in the job title, salaries,

and weeks worked.  *Id.* ¶ 24.  Plaintiffs' Counsel analyzed this data and constructed a damages

model.  *Id.* ¶ 25.  The parties then drafted mediation briefs setting forth their respective positions

as to liability and damages, and Plaintiffs provided Defendant with their brief so that Defendant

could evaluate the strengths of Plaintiffs' claims.  *Id.* ¶ 26.

On September 22, 2016, the parties attended private mediation in Chicago, Illinois, with

Hunter Hughes, a nationally well-regarded mediator who is experienced in employment law

class and collective actions.  *Id.* ¶ 27.  At the mediation, the parties reached an agreement on the

material terms of the settlement.  *Id.* ¶ 28.  During the ensuing months, the parties finalized the

terms of the settlement, which were memorialized in a formal Settlement Agreement executed by

the parties on or about November 29, 2016.  *Id.* ¶ 29.

## SUMMARY OF THE SETTLEMENT TERMS

### I.  The Settlement Fund

The Settlement Agreement establishes a fund of $3,000,000.00 (the "Fund") from which

Class Members can claim settlement awards.  Ex. A ¶ 1.12.  The Fund covers any Court-

approved service awards to Plaintiffs, any Court-approved attorneys' fees and costs, and the

settlement claims administrator's ("Settlement Administrator's") fees and costs, in addition to

class member awards.  *Id.*

## II.     Eligible Employees

Eligible Settlement Class Members are any and all current and former AGMs, other than in California, employed by Defendant at any time between November 23, 2013, and November 23, 2016.  *Id.* ¶¶ 1.10, 1.26.

## III.     Claim Procedure

The Settlement Administrator will mail notice of the settlement, and a claim form, to all Eligible Settlement Class Members within twenty-one days of the Effective Date.  *Id.* ¶ 2.8.  The proposed Settlement Notice and Claim Form will inform Eligible Settlement Class Members of the nature of the claims made, the terms of the settlement, their individual settlement allocations (which the Settlement Administrator will calculate based on Defendant's data), the scope of the release, their right to participate or not, and provide a simple claim form for them to submit.  *See id.* at Ex. B (Settlement Notice and Claim Form).

To submit a Claim Form, an Eligible Settlement Class Member will have the later of: (i) 60 calendar days; or (ii) for individuals receiving a re-mailing, 45 days from the Settlement Administrator last re-mailing of a Settlement Notice and Claim Form that was returned as undeliverable.  *Id.* ¶ 1.5.  The Settlement Administrator will send reminder postcards via e-mail and U.S. mail thirty days after the initial mailing of the Settlement Notice to those who have not returned an executed Claim Form.  *Id.* ¶ 2.10.  If a Claim Form is returned and not properly completed, the Settlement Administrator will send a Cure Letter including a new Claim Form to be completed, and the Eligible Settlement Class Member will have the remainder of the Claim Period, or fifteen days from the mailing of the Cure Letter (whichever is longer), to return a new Claim Form.  *Id.* ¶ 2.11(ii).  Defendant will provide the Settlement Administrator with funds sufficient to cover checks to Participating Settlement Class Members and Defendant's share of payroll taxes within 30 days after the close of the Claim Period or Cure Period, whichever is

later. *Id.* ¶¶ 3.1(iv), 3.4(iii). The Settlement Administrator will mail checks to all Participating Settlement Collective Members within thirty days after receiving funds from Defendant. *Id.* ¶ 3.1(iv). Participating Settlement Class Members will have 120 days to negotiate their Settlement Checks. *Id.* ¶¶ 3.4(iv). The Settlement Administrator will provide reminder postcard via e-mail and U.S. mail within sixty days after the mailing to Participating Settlement Class Members who have not negotiated their Settlement Checks. *Id.* ¶ 3.4(iv).

## IV.    <u>Release</u>

All Participating Settlement Collective Members will release: (i) all claims from January 5, 2013 through November 23, 2016 related to overtime or overtime pay under the FLSA or any state wage and hour law, whether known or unknown, that were or could have been asserted in the Litigation and/or this matter, arising from that Participating Settlement Class Member's employment as an AGM during that period of time; and (ii) all claims for wages, penalties, liquidated damages, interest, attorneys' fees, costs or litigation expenses based on the claims listed in (i) above. *Id.* ¶ 4.2.

An Eligible Settlement Class Member who does not timely execute and return a Claim Form will not release any claims. *Id.* ¶ 4.3.

## V.    <u>Allocation Formula</u>

Eligible Settlement Class Members will be eligible for a settlement payment pursuant to an allocation formula based on the number of weeks they worked during the Relevant Period. *Id.* ¶ 3.4. Each Eligible Settlement Class Member, including the Named Plaintiffs and *Carter* Plaintiff, shall be assigned one point for each week in which the individual was employed during the Relevant Period. *Id.* 3.4(i)(a). The Settlement Administrator will then add all points for all Eligible Settlement Class Members together to obtain the "Denominator". *Id.* 3.4(i)(b)(1). The Settlement Administrator will then divide the number of points for each Eligible Settlement

Class Member by the Denominator to obtain each Eligible Settlement Class Member's "Portion of the Net Settlement Fund." *Id*. The Settlement Administrator next will multiply each Eligible Settlement Class Member's portion of the Net Settlement Fund by the Net Settlement Fund to determine each Eligible Settlement Class Member's Settlement Amount. *Id*. The Settlement Administrator will distribute a check to each Participating Settlement Class Member minus applicable employee payroll taxes and withholdings. *Id*. ¶ 3.4(v). For tax purposes, 50% of the payment to each Participating Class Member shall be treated as back wages, subject to employee payroll taxes and withholdings, and 50% will be treated as interest, any applicable penalties, liquidated damages and other non-wage relief. *Id*.

Any Settlement Checks not cashed within the appointed period will become void and shall become a part of a reversion to Defendant. *Id*. ¶ 3.4(iv).

**VI.** <u>**Service Award**</u>

The Settlement Agreement provides that, with Court approval, Named Plaintiffs and the *Carter* Plaintiff will each receive a $10,000.00 service award in recognition of assistance rendered in obtaining the benefits of the settlement for the class as well as the risks they took to do so. *Id*. ¶ 3.3(i). Named Plaintiffs and the *Carter* Plaintiff assisted counsel in the investigation of the claims, produced documents to support the claims, helped prepare for the mediation, and provided their own, vital testimony that helped Plaintiffs' Counsel achieve this settlement. Swartz Decl. ¶¶ 37-40.

**VII.** <u>**Settlement Claims Administration**</u>

The parties have retained Rust Consulting, Inc. ("Rust"), a wage and hour claims administrator, to serve as the Settlement Administrator. *Id*. ¶ 30. Courts have routinely approved Rust as a settlement administrator in class actions. *See, e.g.*, *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09 Civ. 3690, 2014 WL 1017515, at *3 (N.D. Ill. Mar. 17,

2014) (approving Rust as claims administrator). Rust's fees of a maximum of $34,000 will be paid from the Fund. Ex. A ¶ 1.12; *see also* Swartz Decl. ¶ 31.

## VIII. Attorneys' Fees and Litigation Costs

Under the Settlement Agreement, subject to Court approval, Plaintiffs' Counsel will receive $1,000,000 (one-third of the $3,000,000 settlement) as attorneys' fees, plus reimbursement of $32,621.04 which represents reasonable out-of-pocket costs and expenses incurred in litigating and resolving this matter. *See* Ex. A ¶ 3.2; Swartz Decl. ¶ 46 & Ex. I; Declaration of Gregg I. Shavitz ("Shavitz Decl.," attached to this memorandum of law as Exhibit 2) at 5; Declaration of Rowdy B. Meeks ("Meeks Decl.," attached to this memorandum of law as Exhibit 3) ¶ 12.

## ARGUMENT

## I. A One-Step Approval Process Is Standard for FLSA Settlements.

In the Seventh Circuit, and throughout the country, a one-step approval process is appropriate in FLSA settlements that do not include Rule 23 classes.[4] This is because collective

---

[4] *See, e.g.*, *Briggs v. PNC Fin. Servs. Grp. Inc.*, No. 15 Civ. 10447 (N.D. Ill. Nov. 29, 2016) (attached as Exhibit B) ("A one-step settlement approval process is appropriate[]" in FLSA settlements.); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) (same); *Watson v. BMO Fin. Corp.*, No. 15 Civ. 11881 (N.D. Ill. July 11, 2016) (attached as Exhibit C); *Besic v. Byline Bank, Inc.*, No. 15 Civ. 8003 (N.D. Ill. Oct. 26, 2015) (attached as Exhibit D); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)."); *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *1 (S.D. Ind. Apr. 24, 2012); *Raymer v. Mollenhauer*, No. 10 Civ. 210, 2011 WL 338825, at *1 (N.D. Ind. Jan. 31, 2011); *see also Blum v. Merrill Lynch & Co., Inc.*, No. 15 Civ. 1636 (S.D.N.Y. May 6, 2016) (attached as Exhibit E); *Anwar v. Transp. Sys., Inc.*, No. 13 Civ. 2666 (S.D.N.Y. Nov. 17, 2014) (attached as Exhibit F) *Bozak v. Fedex Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473, at *1-2 (D.

actions under Section 216(b) of the FLSA do not implicate the same due process concerns as Rule 23 class actions. Collective actions under Section 216(b) require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771-72 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013); *see also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions); *Koszyk*, 2016 WL 5109196 at *1. There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they decide to participate in it. *See Prena*, 2015 WL 2344949, at *1; *Woods*, 686 F.2d at 580 ("The difference between a Rule 23 class action and a section 16(b) class action is . . . that in the latter the class member must opt in to be bound, while in the former he must opt out not to be bound.").

---

Conn. May 23, 2013); *Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, *et al.*, 2012 WL 3060470, at *2 (D. Conn. July 26, 2012); *Powell v. Lakeside Behavioral Healthcare, Inc.*, No. 11 Civ. 719, 2011 WL 5855516, at *1 (M.D. Fla. Nov. 22, 2011).

## II.     **The Settlement Is Fair and Reasonable and Should Be Approved**.

The Court has a duty to "determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011).

Courts approve wage and hour settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, No. 11 Civ. 592, 2013 WL 5745102, at *1 (W.D. Wis. Oct. 23, 2013); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010); *see also Butler*, 2011 WL 4729789, at *8-9.  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.  *Lynn's Food Stores*, 679 F.2d at 1354; *Roberts*, 2014 WL 4804252, at *2.  "It is a well settled principle that the law generally encourages settlements." *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979).

The settlement in this case easily meets the standard for approval.  The settlement was the result of extensive pre-suit investigation, discovery, and substantial arm's-length negotiations. Swartz Decl. ¶¶ 15-29.  Recognizing the uncertain legal and factual issues involved, the parties reached the settlement pending before the Court after private mediation before an experienced mediator.  *Id.* ¶ 27.

The settlement amount of $3,000,000 is substantial, especially in light of the considerable risk that Plaintiffs face.  First, Plaintiffs calculations show that the average net settlement award will be approximately $1,329.62 (after fees, service awards, and costs (including settlement administration costs) are netted out).  *Id.* ¶ 33. By Plaintiffs' estimate, this is a substantial percentage of the class' lost wages.  *Id.* ¶ 34.  However, by Defendant's estimate, even if

10

Plaintiffs were to establish at trial that AGMs should have been classified as non-exempt, the lost wages of the class would be much smaller.

Second, there was a risk that Plaintiffs would not succeed on a motion for FLSA notice, or in maintaining a collective through trial. Defendant would likely argue that the differences among various stores and other individualized questions precluded certification, or would warrant decertification of a collective. Although Plaintiffs disagree, defendants have prevailed on such arguments. *See, e.g.*, *Gromek v. Big Lots, Inc.*, No. 10 Civ. 4070, 2010 WL 5313792, at *5 (N.D. Ill. Dec. 17, 2010) (denying FLSA certification of ASM claims because "significant differences are present between the job duties of individual ASMs"); *see also Beckman*, 293 F.R.D. at 480 (collecting misclassification cases where courts decertified FLSA collectives).

Third, a trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. The status of AGMs under the FLSA is highly contextual with facts pointing in both directions, and some cases supporting Defendant's position. *See, e.g.*, *Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1007-10 (N.D. Ill. 2010) (dismissing claims of assistant store managers and finding they were properly classified as exempt under Illinois wage and hour laws); *Jackson v. Go-Tane Servs., Inc.*, No. 99 Civ. 5686, 2001 WL 826867, at *3-4 (N.D. Ill. July 18, 2001) (granting summary judgment to employer on claims of certain assistant managers). Although Plaintiffs believe these cases are distinguishable, and that they could ultimately establish Defendant's liability, this would require significant factual development.

The proposed allocation of the settlement also is reasonable. It reflects a proportion of damages owed to Eligible Settlement Class Members based on the number of weeks they worked for Defendant, which is a reasonable approximation of each Eligible Settlement Collective Member's damages, given the evidence that AGMs tended to work similar hours. Ex. A ¶

3.4(i)(b) (allocation plan); *see Summers v. UAL Corp. ESOP Comm.*, No. 03 Civ. 1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (approving allocation plan as reasonable when "settlement funds . . . will be disbursed on a pro rata basis"); *see also Hens v. Clientlogic Operating Corp.*, No. 05 Civ. 381, 2010 WL 5490833, at *2 (W.D.N.Y. Dec. 21, 2010) (allocation formula based on plaintiffs' length of service was equitable and reasonable).

The Court should also approve the proposed Settlement Notice and Claim Form. *See* Ex. A (Settlement Agreement) at Ex. B (Settlement Notice and Claim Form). The proposed Settlement Notice informs Eligible Settlement Class Members of the terms of the settlement, including the allocation formula, how Class Members may participate (or not participate), the settlement payment to which they are entitled, the release, and the request for attorneys' fees and costs. *Id.*; *see also Koszyk*, 2016 WL 5109196, at *2 (approving class notice that, *inter alia*, described settlement terms and fee allocation); *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014) (same); *Tobin v. Beer Capitol Distrib. Inc.*, No. 12 Civ. 274, 2012 WL 5197976, at *3 (E.D. Wis. Oct. 19, 2012) (same); *Bozak*, 2014 WL 3778211, at *3 (approving FLSA notice providing notice of settlement terms and options facing class). The Claim Form is a straight forward one-page form. *See* Ex. A at Ex. B.

III.    **The Service Awards to Plaintiffs Should Be Approved as Fair and Reasonable**.

The Named Plaintiffs and *Carter* Plaintiff request approval of service awards of $10,000.00 each. The Service Awards that they request are reasonable given the significant contributions they made to advance the prosecution and resolution of the lawsuit. Named plaintiffs in class action lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to

participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). This is especially true in employment litigation. *See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (internal quotation marks omitted))); *see generally* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006).

Service awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See, e.g.*, *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012); *Cook*, 142 F.3d at 1016; *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012); *cf. Follansbee v. Discover Fin. Servs., Inc.*, No. 99 Civ. 3827, 2000 WL 804690, at *7 (N.D. Ill. June 21, 2000) (recognizing incentive awards' importance). Service awards are commonly awarded to those who serve the class' interests. *Massiah*, 2012 WL 5874655, at *8 (collecting cases); *accord Chesemore v. Alliance Holdings, Inc.*, No. 09 Civ. 413, 2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011).

In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs

expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07 Civ. 2898, 09 Civ. 2026, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012). Here, Plaintiffs satisfy all three factors.

First, Plaintiffs took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit. They participated in an extensive pre-suit investigation, provided documents crucial to establishing their claims and the claims of the putative Class, extensively reviewed the claims presented, and helped Counsel prepare for the mediation. *See* Swartz Decl. ¶ 37. The *Carter* Plaintiff also responded to discovery requests. *Id.* ¶ 38.

Courts in this circuit and others have approved service awards for similar activities. *See, e.g.*, *Koszyk*, 2016 WL 5109196, at *3 (approving $10,000 service awards for assistance early in lawsuit); *Watson*, No. 15 Civ. 11881 (attached as Exhibit C) (same with $10,000 award); *Besic*, No. 12 Civ. 1135 (attached as Exhibit D) (same with $10,000 award); *Zolkos*, 2015 WL 4275540, at *3 (same with $5,000 and $10,000 awards); *Chesemore*, 2014 WL 4415919, at *5, *12 (same with $10,000 and $25,000 awards for, *inter alia*, submitting to discovery and participating in settlement discussions); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 WL 3778173, at *16 (S.D.N.Y. July 31, 2014) (same with $10,000 awards). Here, the actions of Plaintiffs have resulted in substantial benefit to the class, leading to an overall gross recovery of $3,000,000.00, which results in an estimated net average award of $1,329.62. Swartz Decl. ¶¶ 32-33.

Second, Plaintiffs undertook substantial direct and indirect risk. They agreed to bring the action in their names, to be deposed, and to testify if there was a trial. *Id.* ¶ 39. In so doing, they assumed significant risk that "should the suit fail, [they could] find [themselves] liable for the

defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid*, 688 F.3d at 876-77 (internal citations omitted). "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks." *Id.*; *accord Koszyk*, 2016 WL 5109196, at *3.

Although Plaintiffs were no longer employed by Defendant when they initiated or joined the lawsuit, they merit recognition for risking retaliation from future employers for the benefit of all Class Members. *See Beesley v. Int'l Paper Co.*, No. 06 Civ. 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (recognizing suits against former employers also carry professional and personal repercussion risks); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (named plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against their prior employer); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("[F]ormer employees . . . fac[e] potential risks of being blacklisted as 'problem' employees."); *Guippone v. BH S & B Holdings, LLC*, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010).

Third, Plaintiffs spent a significant amount of time and effort in pursuing this litigation on behalf of the Eligible Settlement Class Members. This included the time and effort they expended in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought, assisting in the preparation and review of the complaint, and preparing for the mediation. Swartz Decl. ¶ 40; *see Koszyk*, 2016 WL 5109196, at *3; *see also Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 105 (D.D.C. 2013) (class members benefited from named plaintiff's "sustained

contributions" to the litigation, which resulted in a sizable ERISA common fund); *Johnson v. Midwest Logistics Sys., Ltd.*, No. 11 Civ. 1061, 2013 WL 2295880, at *5-6 (S.D. Ohio May 24, 2013) (recognizing that class members benefited from the class representative's contributions to litigation, and approving a service award of $12,500 when other class members' recovery would range from $260 to $1,000 and the gross settlement fund was $452,380); *In re Lorazepam & Clorazepate Antitrust Litig.*, Nos. MDL 1290, 99 MS 276, 99 Civ. 0790, 2003 WL 22037741, at *11 (D.D.C. June 16, 2003) (class members benefit from class representatives' filing a class action and expending time and effort to achieve a class settlement).

Finally, courts routinely approve service awards equal to or greater than the awards requested here. *See Koszyk*, 2016 WL 5109196, at *3 ($10,000 service awards for assistance to collective early in lawsuit); *Watson*, No. 15 Civ. 11881 (attached as Exhibit C) (same); *Besic*, No. 12 Civ. 1135 (attached as Exhibit D) (same); *Zolkos*, 2015 WL 4275540, at *3 (service awards of $5,000 and $10,000).[5]

---

[5]    *See also Ceka v. PBM/CMSI Inc.*, No. 12 Civ. 1711, 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014) (finding service award of $10,000 "reasonable and justified to compensate Class Representatives for the services they provided and the risks they incurred during the course of the class action litigation"); *Chesemore*, 2014 WL 4415919, at *5 (noting that courts in the Seventh Circuit routinely approve incentive awards ranging from $5,000 to $25,000); *Sukhnandan*, 2014 WL 3778173, at *16 (approving service awards of $10,000 to each of the named plaintiffs); *Swigart v. Fifth Third Bank*, No. 11 Civ. 88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) ("The modest class representative award requests of $10,000 to each of the two Class Representatives have been tailored to compensate each Class Representative in proportion to his or her time and effort in prosecuting the claims asserted in this [FLSA] action."); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *10 (S.D.N.Y. Mar. 21, 2013) (approving service awards of $15,000 and $12,500 to class representatives and $4,000 to an opt-in plaintiff in wage and hour action); *Heekin v. Anthem, Inc.*, No. 05 Civ. 1908, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award); *Sewell*, 2012 WL 1320124, at *14-15 (approving payments of $10,000 and $15,000); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving awards of $15,000 and $5,000); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving awards of $15,000 and

16

The requested Service Awards amount to less than 1.4% of the total recovery, which is a reasonable percentage. Swartz Decl. ¶ 41; *see Reyes*, 2011 WL 4599822, at *9 (approving awards of approximately 16.6%); *Parker*, 2010 WL 532960, at *2 (same with 11% of recovery as reasonable "given the value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards"); *Frank*, 228 F.R.D. at 187 (same with approximately 8.4% of settlement).

IV.     **Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable**.

A.      **The Court Should Award Attorneys' Fees From a Percentage of the Fund**.

The Court should award attorneys' fees as a percentage of the total fund made available to the Class. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of common fund "entitles [counsel] to a share of that benefit as a fee"). This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-692 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)); *Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014); *see also Boeing*, 444 U.S. at 478.

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994)—the trend in the Seventh Circuit

---

$10,000); *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, No. 00 Civ. 584, 2004 WL 287902, at *3 (S.D. Ill. Jan. 22, 2004) (approving $20,000 incentive award in ERISA matter); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) (finding that the mean incentive award in employment class actions is approximately $12,000).

is to use the percentage of the fund method in common fund cases like this one. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014); *Campbell*, 2012 WL 1424417, at *2 (FLSA settlement); *see also Koszyk*, 2016 WL 5109196, at *3-4; *Prena*, 2015 WL 2344949, at *1.[6]

It is especially appropriate to use a common fund approach in cases based on fee shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . . ." *Skelton*, 860 F.2d at 256; *accord Florin*, 34 F.3d at 564. Here, the settlement releases Plaintiffs' and Participating Settlement Class Members' statutory claims to fees under the FLSA and state wage and hour laws.[7]

There are several other reasons that courts in the Seventh Circuit favor the percentage of the fund method. First, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003). Where attorneys' fees are limited to a percentage of the total, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation . . . a fee based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

---

[6] The trend in other circuits is to use the percentage of the fund method as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001).

[7] *See, e.g.*, 29 U.S.C. §216 (b).

Second, the percentage method preserves judicial resources because it saves the Court from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"); *Gaskill*, 942 F. Supp. at 386 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (fee requests "should not result in a second major litigation")). Courts in this district routinely apply the percentage method to common fund settlements and have noted the advantages of this approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making). As the Second Circuit has explained, the "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) (citation omitted).[8]

**B.      The Results and Benefits Conferred Upon the Class Justify the Fee Award**.

This Settlement will provide the Class with a substantial cash payment. The Settlement Agreement provides that Defendant will pay a maximum settlement amount of $3,000,000.00 to

---

[8]      The Seventh Circuit's opinion in *Pierce v. Visteon Corp.*, 791 F.3d 782 (7th Cir. 2015), has no impact on long-standing Seventh Circuit jurisprudence that in class settlements, class counsel should be awarded a portion of the fund their work creates. In *Pierce*, the Court addressed a unique situation where a lawyer obtained a judgment in his or her client's favor, recovered an attorneys' fee on a lodestar basis that the court found to be a reasonable fee, and then sought a second fee recovery on a percentage of the fund basis. *Id.* at 783-88.

settle all claims against them. *See* Swartz Decl. ¶ 42. This is well within the range of reasonable recoveries for the Class. *Id.*

The settlement represents significant value given the attendant risks of litigation. *Id.* ¶ 43. By Plaintiffs' estimation, the $3,000,000.00 guaranteed settlement amount represents approximately 80% of the class's lost wages, based upon the estimate that each Eligible Class Member worked an average of eight overtime hours per week, which Defendant's records suggest may be considerably higher than the actual average weekly hours. *Id.* ¶ 44.[9]

The Settlement also does not present any signs of collusion. It was vigorously negotiated with the help of a well-respected class action employment law mediator. *Id.* ¶¶ 23-29; *see also Lapan v. Dick's Sporting Goods, Inc.*, No. 13 Civ. 11390, 2015 WL 8664204, at *1 (D. Mass. Dec. 11, 2015) (finding assistance of mediator Hughes "reinforces that the Settlement Agreement is non-collusive"). All Eligible Settlement Class Members' awards will be calculated according to the same allocation formula. Swartz Decl. ¶ 35. There is no "clear-sailing" provision. *Id.*; *cf. Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014).

Moreover, litigation would pose significant risks. While Plaintiffs believe they would prevail on their claims, Defendant has asserted numerous defenses as to liability and damages. If Plaintiffs continued to litigate, they would have to contend with unfavorable decisions issued by district courts in this Circuit as to the status of AGMs as exempt and class certification.

## C. Analysis of the Market For Legal Services Supports Plaintiffs' Request.

In awarding fees, courts ultimately "must do their best to award counsel the market price

---

[9]     This estimated recovery is made according to the fluctuating work week, pursuant to *Urnikis-Negro v. American Family Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010).

for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d at 718; *Koszyk*, 2016 WL 5109196, at *3. District courts "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Sutton*, 504 F.3d at 692. They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases[.]" *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

### 1. Plaintiffs' Request for One-Third of the Settlement Is the Normal Rate of Compensation in the Northern District of Illinois Market.

The attorneys' fees that Plaintiffs' Counsel request are based on the market in the Northern District of Illinois. *Id.* at 600 (approving attorneys' fees based on, *inter alia*, "legal hurdles that lead counsel faced in proving liability") (citing *Donovan v. Estate of Frank E. Fitzsimmons,* 778 F.2d 298, 309 (7th Cir. 1985)). Plaintiffs' Counsel are experienced and nationally recognized for their expertise in litigating complex class and collective actions, including wage and hour cases like this one, and are justified in seeking compensation in the form of one-third of any potential settlement (plus costs) for their efforts. Swartz Decl. ¶¶ 4-13; Shavitz Decl. ¶¶ 4-11; Meeks Decl. ¶¶ 3-11.

Before agreeing to take on this matter, Plaintiffs' Counsel agreed with the Named Plaintiffs to request no more than one-third of any (at that time uncertain) future recovery, plus costs. *See* Swartz Decl. ¶ 45. Thus, the Court knows what private plaintiffs "would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)," *In re Synthroid*, 264 F.3d at 718, because the Named Plaintiffs contracted for Plaintiffs' Counsel to be compensated with the amount Plaintiffs' Counsel now seek, *see In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015) (stating

21

"presumption of market-rate reasonableness" would have attached if parties had "established[ed] a fee structure at the outset of [the] lawsuit"); *see also Koszyk*, 2016 WL 5109196, at \*4.

It was reasonable for the Named Plaintiffs to contract for one-third of the settlement fund to be paid to Plaintiffs' Counsel. In the Northern District of Illinois, class and collective action employment lawyers routinely contract to receive one-third of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery. *See Briggs*, No. 15 Civ. 10447, at ¶ 19 (attached as Exhibit B); *Koszyk*, 2016 WL 5109196, at \*4. In addition, one-third is the standard contingent percentage that employment lawyers in the District charge individual clients. *Id.* These multiple data points, confirming that plaintiffs routinely are willing to agree to a one-third contingency fee arrangement, reinforces that Plaintiffs' Counsel request the proper market rate. *See In re Synthroid*, 325 F.3d at 976.

Courts regularly agree that "a counsel fee of 33.3% of the common fund is comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers in an FLSA action." *Burkholder*, 750 F. Supp. 2d at 997 (quotation marks omitted, collecting cases); *see Briggs*, No. 15 Civ. 10447 (attached as Exhibit B) (approving award of one-third settlement plus costs in wage and hour litigation); *Koszyk*, 2016 WL 5109196, at \*3 (same); *Rusin*, No. 12 Civ. 1135 (attached as Exhibit G) (same); *Campbell*, 2012 WL 1424417, at \*2 (same). These awards of "attorneys' fees from analogous class action settlements are indicative of a rational relationship between the record in this similar case and the fees [Plaintiffs propose should be] awarded by the [Court]." *Taubenfeld*, 415 F.3d at 600.

Here, Plaintiffs' Counsel's requested fee is well within the market rate for common fund wage and hour actions within the Northern District of Illinois. *See id.* at 599-600 (noting class

actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund); *Gaskill v. Gordon*, 160 F.3d 361, 364 (7th Cir. 1998) (affirming award of 38% of fund); *Briggs*, No. 15 Civ. 10447 (attached as Exhibit B) (awarding fees as one-third of fund); *Koszyk*, 2016 WL 5109196, at *4 (same); *Watson*, No. 15 Civ. 11881 (attached as Exhibit C) (same); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d at 842 (same); *Zolkos*, 2015 WL 4275540, at *3 (same); *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995) (same and noting that "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"); 4 Robert Newberg, *Newberg on Class Actions* § 14.6 (4th ed. 2002) ("[F]ee awards in class actions average around one-third[.]").

### 2.     The Risk of Nonpayment Was Significant.

Plaintiffs' Counsel's decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Plaintiffs' Counsel faced.  At the outset of the representation, Plaintiffs' Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Plaintiffs.  *Taubenfeld*, 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees).  Plaintiffs' Counsel took this case on a contingent basis, meaning that there was a strong risk that they would not be paid.  *See Sutton*, 504 F.3d at 693-94 ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit.").  Should the Court reject the settlement, Plaintiffs' Counsel also face significant legal hurdles in establishing certification and proving liability.  *See* Argument, *supra* § II.  As the Seventh Circuit has noted, Plaintiffs' Counsel "could have lost [and still could lose] everything" they invested.  *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992); *Koszyk*, 2016 WL 5109196, at *4.

### D. Plaintiffs' Counsel's Fee Request Is Reasonable and Should Be Approved Without a Lodestar Cross-Check.

Plaintiffs' Counsel's fee request should be approved because it is reasonably based on the

market rate. No further showing or analysis is needed. *Schulte v. Fifth Third Bank*, 805 F. Supp.

2d 560, 598 n.27 (N.D. Ill. 2011) ("[U]se of a lodestar cross-check in a common fund case is

unnecessary, arbitrary, and potentially counterproductive."). This is because the recovery for

Class Members is substantial, the entire Net Settlement Fund is available to Eligible Settlement

Class Members without the need for them to submit claim forms, and the settlement does not

present indicia that it was the product of collusion between the parties at the expense of Class

Members. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011)

("consideration of a lodestar check is not an issue of required methodology"); *In re Dairy

Farmers of Am., Inc.*, 80 F. Supp. 3d at 850 ("For attorneys who are arguing for a percentage-of-

the-fund fee award, any delineation of hours is seemingly unnecessary . . . ."). Although courts

occasionally review counsel's lodestar as "a cross-check to assist in determining the

reasonableness of the fee award," *Heekin*, 2012 WL 5878032, at *2, the lodestar cross-check is

of limited utility because "[u]ltimately . . . the market controls," *In re Trans Union Corp. Privacy

Litig.*, No. 00 Civ. 4729, 2009 WL 4799954, at *9 (N.D. Ill. Dec. 9, 2009).

Plaintiffs' Counsel's substantial work to date has "bought" a significant recovery for

Class Members, the Court need not analyze Plaintiffs' Counsel's lodestar.[10]

---

[10]    If requested by the Court, Plaintiffs' counsel will submit their lodestar for review. But further illustrating that the lodestar is an ineffective benchmark for reasonableness, recent opinions from the Northern District of Illinois have rejected the lodestar cross-check *even while finding the fees in question to be reasonable*. *See, e.g., Kaplan*, 2014 WL 2808801, at *3-4 (rejecting plaintiffs' cross-check lodestar arguments as "absurd" but finding contingency rate reasonable because it was "well within the range of market prices"); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d at 849 ("Ultimately, the Court sees no utility in considering this somewhat-

**E.** **Although the Court Should Not Use the "Redman Ratio Test" to Cross-Check the Settlement, the Fee Request Would Pass It.**

In three recent cases, the Seventh Circuit was faced with three low claims-rate consumer settlements that were negotiated under questionable circumstances and where only the parties and lawyers (not class members) were to benefit from the proposed settlement. *See Pearson*, 772 F.3d 780-81; *Redman*, 768 F.3d 622; *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ("the Consumer Cases"). In each of the Consumer Cases, the class recovery was miniscule, the claims process was designed to discourage class participation, the claims' rate was exceedingly low, and there were other indicia that the plaintiffs' counsel had "sold-out" the class to further the plaintiffs' counsel's own pecuniary interests. As a result, based on the specific facts of two of those cases, the Seventh Circuit instructed the district courts to examine the ratio of the fee requested to the fee plus what class members received, as a cross-check, and as a deterrent to what the Seventh Circuit viewed as attorney-driven litigation (the "*Redman* Ratio test"). *See Redman*, 768 F.3d at 630; *accord Pearson*, 772 F.3d at 781. The Settlement here, however, could not differ more from the settlements in the Consumer Cases. As is more fully set forth below, because this is not a Rule 23 settlement, and value of this Settlement to the Class is readily apparent, no further cross-check is needed.

**1.** **The Redman Ratio Test Should Not Apply.**

At the threshold, the Consumer Cases are simply inapplicable because this is a wage and hour settlement facilitated by the FLSA opt-in procedure where no Eligible Settlement Class Members will release claims without affirmatively deciding to join the case. *See* Argument, *supra* § I (FLSA settlements do not implicate same due process concerns as Rule 23 class action

---

arbitrary (and under-vetted) [lodestar] calculation, and thus disregards this evidence for purposes of this fee petition.").

settlements). If an AGM does not like this settlement, he or she can simply decide not to join the case without losing his or her claims or right to sue. *See also* Ex. H (May 15, 2015 transcript of settlement approval hearing in *Prena v. BMO Fin. Corp.*, No. 14 Civ. 9175 (N.D. Ill.) at 4:11-19 (explaining that if individuals do not opt in "there will be no releases whatsoever")).

For at least four additional distinct reasons, this high-value settlement is easily distinguishable from the Consumer Cases. First, through this Settlement, Plaintiffs' Counsel have provided a significant cash value. The Settlement Agreement provides each Eligible Settlement Class Member with an individualized, guaranteed, minimum cash payment so long as they claim it. Plaintiffs' Counsel's calculations show that the average net award will be approximately $1,329.62. Swartz Decl. ¶ 33. These are big checks. In sharp contrast, the settlements in the Consumer Cases brought little, if any, real value to their class members. *See Eubank*, 753 F.3d at 723, 725-26 (class members only received a "contingent" recovery where high value claims had to "run the gauntlet of arbitration" and others just received coupons); *Redman*, 768 F.3d at 628, 637 (class members submitting claim received $10 RadioShack coupon that was "difficult[]" to value in the aggregate; value to class was "uncertain because it is not a cash settlement"); *Pearson*, 772 F.3d at 783-84 (actual recovery was "7 cents apiece").

Second, Plaintiffs' Counsel have drafted a simple notice, planned robust efforts to locate Class Members for whom the initial notices are returned undeliverable, and included reminder notices for participating in the settlement and cashing settlement checks. Swartz Decl. ¶ 35. Thus, the notice here is nothing like the notices in the Consumer Cases. In those cases, the notices were complicated and designed to *decrease* participation. *See Eubank*, 753 F.3d at 725-26 (notice divided into 27 sections with numerous subsections, class members had to satisfy nine criteria to claim benefits, and claims forms were extremely "complicated" so that defendant

could reject many); *Redman*, 768 F.3d at 628 (of 16 million assumed class members, notice of settlement "was sent to fewer than 5 million"); *Pearson*, 772 F.3d at 782-83 (notice was structured "with an eye toward discouraging the filing of claims").

Third, because of the high Settlement Amount, and because everyone who will receive a notice is eligible to receive a check, Plaintiffs' Counsel expect a claims rate that will easily exceed those in the Consumer Cases where, due to the small value that the settlement provided to the class members and the byzantine notices and claim forms, the claims rate was very low. *See Eubank*, 753 F.3d at 726 (only 1,276 claims were filed out of more than 225,000 notices sent); *Redman*, 768 F.3d at 628 ("a little more than one half of one percent of the entire class" submitted claims); *Pearson*, 772 F.3d at 782 ("one quarter of one percent" submitted claims).

Moreover, the Consumer Cases exhibited other suspicious circumstances simply not present in this Settlement. *See Eubank*, 753 F.3d at 724 ("[Class Counsel]'s ethical troubles should have disqualified him from serving as class counsel even if his father-in-law hadn't been in the picture [as class representative]."); *Redman*, 768 F.3d at 637 ("The existence of such [clear-sailing] clauses . . . illustrates the danger of collusion in class actions between class counsel and the defendant, to the detriment of the class members."); *id.* at 638 ("[T]he lead named plaintiff . . . is employed by a law firm for which the principal class counsel . . . once worked."); *Pearson*, 772 F.3d at 787 (implying plaintiffs' counsel intended to "sell out the class by agreeing with the defendant to recommend that the judges approve a settlement involving a meager recovery for the class but generous compensation for the lawyers") (internal citation and quotation marks omitted).

## 2. The Court Should Analyze the Actual Value to the Class Based on the Total Available Amount Available to Be Claimed.

The Consumer Cases also do not alter the decades-old Supreme Court holding that the value to the Class should be analyzed in relation to the total settlement. *See Boeing*, 444 U.S. at 48. As *Pearson* acknowledges, "[i]n regard to sizing the benefit of the settlement to the class . . . an option to file a claim creates a prospective value, even if the option is never exercised." 772 F.3d at 782. This is because "the right of class members 'to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.'" *Id.* (quoting *Boeing*, 444 U.S. at 480). Here, like in *Boeing*, Plaintiffs' Counsel have created a real benefit to all Class Members by providing them with an option to file a claim on a settlement of $3,000,000. "The class members [are] known, the benefits of the settlement ha[ve] been 'traced with some accuracy,' and costs [can] be 'shifted with some exactitude to those benefiting.'" *Id.* (discussing and quoting *Boeing*, 444 U.S. at 480-81).

Rather than altering the Supreme Court's rule (which it could not do), the Seventh Circuit found that the actual benefit to the class was much less than the total purported settlement amount. This was because (as discussed above) the settlement amounts that were the basis of the fee awards were speculative, and the claims process was structured to minimize participation (and thus to minimize claims on the settlement). *See, e.g., id.* at 781, 783. Thus, *Pearson* differed from *Boeing*, where class counsel created a fund, class members had an undisputed right to it, and could easily claim from it. *See id.* at 782. *Pearson* did not create a rule that the value to class members should only be viewed in proportion to what they actually claimed. Such a rule would run counter to Supreme Court precedent.

Here, like in *Boeing*, Plaintiffs' Counsel have provided a significant, *ascertainable* $3,000,000 settlement fund with a straight-forward path for Class Members to easily claim what Plaintiffs' Counsel achieved for them. The reversion present in this case does not alter the value that Plaintiffs' Counsel achieved. This is because "[t]he members of the class, whether or not they assert their rights, are at least the equitable owners of their respective shares in the recovery." *Boeing*, 444 U.S. at 481-82. "Any right that [Defendant] may establish to the return of money eventually unclaimed is contingent on the failure of absentee class members to exercise their present rights of possession." *Id.* at 482. Plaintiffs' Counsel created that benefit for the putative Class, and unlike in the Consumer Cases, there are no barriers to claiming it. Despite the potential reversion, it is proper to impose a burden on Class Members for that benefit. "Although [Defendant] . . . cannot be obliged to pay fees awarded to the class lawyers, [Defendant's] latent claim against unclaimed money in the judgment fund may not defeat each class member's equitable obligation to share the expenses of litigation." *Id.*; *see also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: (1) approving the $3,000,000 settlement as fair, adequate, and reasonable, as set forth in the Settlement Agreement and Release; (2) approving the proposed Settlement Notice and directing its distribution; (3) approving a service award of $10,000.00 each to Named Plaintiffs and the *Carter* Plaintiff; (4) approving Plaintiffs' request for one-third of the settlement fund for attorneys' fees and additional costs and litigation expenses; (5) approving the Settlement Administrator's fees and costs of $32,621.04; (6) incorporating the terms of the Settlement Agreement; (6) dismissing this case without prejudice, which will become dismissal with prejudice 55 days thereafter provided the payments required under paragraph 3 of Settlement

29

Agreement have been made, with each party to bear his or its own attorneys' fees and costs

except as otherwise agreed, and that during the period of time in which the dismissal is without

prejudice, Plaintiffs may file a motion for leave to reinstate should Noodles fail to make payment

as required under paragraph 3 of the Settlement Agreement, and that after the case is dismissed

with prejudice, the parties agree to submit any unresolved dispute to the mediator, Hunter

Hughes, and to be bound by his decision as to such dispute.

Dated: December 1, 2016
      New York, New York               Respectfully submitted,

                                          */s/* Justin M. Swartz
                                          **OUTTEN & GOLDEN LLP**
                                          Justin M. Swartz
                                          Christopher McNerney (admitted *pro hac vice*)
                                          685 Third Avenue, 25th Floor
                                          New York, New York 10017
                                          Telephone:  (212) 245-1000
                                          Facsimile:  (646) 509-2060

                                          Relic Sun (admitted *pro hac vice* motion)
                                          One Embarcadero Center, 38th Floor
                                          San Francisco, California 94111
                                          Telephone:  (415) 638-8800
                                          Facsimile:  (415) 638-8810

                                          Paul W. Mollica
                                          161 North Clark Street, Suite 1600
                                          Chicago, Illinois 60601
                                          Telephone: (312) 809-7010
                                          Facsimile: (312) 809-7911

                                          **SHAVITZ LAW GROUP, P.A.**
                                          Gregg I. Shavitz (admitted *pro hac vice*)
                                          Alan Quiles (admitted *pro hac vice*)
                                          1515 S. Federal Highway
                                          Boca Raton, Florida 33432
                                          Telephone:  (561) 447-8888
                                          Facsimile:  (561) 447-8831

                                          **ROWDY MEEKS LEGAL GROUP LLC**
                                          Rowdy Meeks

8201 Mission Rd. Suite 250
Prairie Village, Kansas 66208
Telephone: (913) 766-5585
Facsimile: (816) 875-5069

**LEWIS KUHN SWAN PC**
Andrew Edward Swan
Michael Dickson Kuhn
Paul F. Lewis
620 North Tejon Street, Suite 101
Colorado Springs, Colorado  80903
Telephone: (719) 694-3000
Facsimile: (866) 515-8628

*Attorneys for Plaintiffs and*
*the Putative Settlement Class*

## CERTIFICATION OF SERVICE

I hereby certify that on **December 1, 2016** a copy of the foregoing documents were filed electronically and service made by certified mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by certified mail for anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/ Justin M. Swartz*
Justin M. Swartz

32